ORIGINAL

FILED
JAN 2 9 2004
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| GENERAL ELECTRIC COMPANY<br><br>Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 04-0108C<br><br>Judge: ________________ |

COMPLAINT

Plaintiff, General Electric Company ("GE"), files this Complaint against the Defendant, the United States of America, acting through the United States Department of Energy ("DOE"), and states as follows:

NATURE OF THE CASE

1. This is an action for breach of contract and taking of property without just compensation. Pursuant to the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. §§ 10101 *et seq*. ("NWPA"), the DOE is a party to a written contract, known as the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Waste (the "Contract" or "Standard Contract"), with GE. Pursuant to the terms of the Standard Contract, the Government was to accept and dispose of spent nuclear fuel and high level waste (collectively for these purposes, "SNF") stored at the Vallecitos facility ("Vallecitos") in Pleasanton, California, on or before January 31, 1998. Plaintiff has honored all of its contractual obligations under the Standard Contract. The Government breached the Standard Contract by failing to accept SNF for disposal as required.

**JURISDICTION**

2. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1491(a)(1).

3. Plaintiff may seek damages without exhausting any administrative remedies because DOE's complete failure to begin acceptance and disposal of the SNF at Vallecitos is a partial material breach of the Standard Contract, and the claim does not "arise under" the Standard Contract. *Maine Yankee Atomic Power Co. v. U. S.*, 225 F.3d 1336 (Fed. Cir. 2000); *Northern States Power Co. v. U. S.*, 224 F.3d 1361 (Fed. Cir. 2000).

4. Furthermore, Article XI of the Standard Contract states, "[n]othing in this contract shall be construed to preclude either party from asserting its rights and remedies under the contract or at law." Pursuant to this provision, Plaintiff is entitled to pursue its legal claims without exhausting any administrative remedies.

**PARTIES**

5. GE is a New York corporation, and the holder of the Standard Contract for SNF stored at Vallecitos.

6. Defendant is the United States of America, acting by and through the DOE. (Defendant may be referred to interchangeably in this Complaint as the United States, DOE, or the Government.)

**STATEMENT OF FACTS**

7. Since enactment of the Atomic Energy Act of 1954, the Government has encouraged the development of commercial reactor technology in the United States.

8. SNF is generated as a byproduct of the operation of nuclear reactors. SNF is composed, in significant part, of uranium and plutonium and other highly radioactive substances. SNF remains radioactive after it is removed from a nuclear reactor and must be isolated in safe disposal facilities for an indefinite period.

9. GE owns and possesses certain SNF, originating from both power and test reactors, which is now stored at Vallecitos. GE owns and operates the Vallecitos facility, pursuant to a license issued by the Atomic Energy Commission, the predecessor to the Nuclear Regulatory Commission ("NRC").

10. In addition to the GE-owned SNF at Vallecitos, SNF is stored at Vallecitos that is owned by, and originated from reactors owned or operated in whole or part by, certain commercial utilities. Each of those parties has a Standard Contract with DOE, covering the SNF that they own which is stored at Vallecitos. GE is a third-party beneficiary of each of those DOE Standard Contracts.

**The Government's Obligations Under the Standard Contract**

11. In 1982, Congress enacted the NWPA, codifying and confirming the Federal Government's long-standing commitment to accept responsibility and provide for the timely disposition of civilian SNF. *See* 42 U.S.C. § 10101 *et. seq.* The NWPA provides that owners of SNF have the primary responsibility to provide for "the interim storage of such waste and spent fuel until such waste and spent fuel is accepted by [DOE] in accordance with the provisions of this Act." 42 U.S.C. § 10131(a)(5).

12. Pursuant to Section 302 of the NWPA (42 U.S.C. § 10222), the Government in 1983 developed the Standard Contract. The Standard Contract provides for the acceptance and disposition of SNF by the Government. *See* 10 C.F.R. § 961.11.

Owners of SNF were required to enter into these Contracts or risk losing their NRC licenses.

13. The DOE entered into the Standard Contract with GE for Vallecitos in 1983.

14. Article IV of the Standard Contract sets out the Responsibilities of the Parties. Section A of Article IV establishes the Purchaser's Responsibilities, including payment of certain fees.

15. GE has fully complied with all of its obligations under the Standard Contract, including the payment of required fees.

16. The Standard Contract for Vallecitos obligates the Government to commence acceptance and disposal of SNF by January 31, 1998 in accordance with the priority established by DOE. *E.g.,* Standard Contract Art. II, Art. IV.B.5(a).

17. The Standard Contract provided that the DOE was to begin accepting SNF no later than January 31, 1998 and to continue "until such time as all SNF and/or HLW [high level radioactive waste] ... has been disposed of." Standard Contract, Art. II.

**<u>DOE's Partial Material Breach of the Standard Contract</u>**

18. An important element of the NWPA was the initial development of waste disposal facilities according to a firm and fixed schedule. DOE quickly fell behind that schedule, failing to meet nearly every one of the early milestones established by the NWPA.

19. In late 1993 and early 1994, DOE began to take actions both recognizing that it would not meet the January 31, 1998 deadline for acceptance of SNF, and

tentatively asserting it may have no obligation to meet that deadline absent an operational repository or other facility.

20. In a joint letter to DOE, dated November 19, 1993, a number of utility, regulatory, and state officials requested that DOE address its responsibilities for accepting and disposing of SNF.

21. On May 25, 1994, DOE published a Notice of Inquiry ("NOI") to elicit views of affected parties on matters relating to the continued storage of SNF beyond 1998. *See* 59 *Fed. Reg.* 27,007 (1994). DOE noted in its NOI its "preliminary view" that it had no statutory obligation to accept SNF by the 1998 deadline in the absence of an operational repository or other facility constructed under the Act.

22. On April 28, 1995, DOE completed the NOI process by issuing its "Final Interpretation." The Final Interpretation proceeded from the premise that DOE would not be able to begin accepting SNF by the January 31, 1998 date established in the Act. *See* 60 *Fed. Reg.* 21,793 (1995). Instead, DOE announced "that it does not have a legal obligation under . . . the Act . . . to begin disposal of SNF by January 31, 1998, in the absence of a repository or interim storage facility constructed under the [NWPA]." *Id.* at 21,794.

23. DOE's position was challenged by several Standard Contract holders in a lawsuit brought before the United States Court of Appeals for the District of Columbia, which ruled that the NWPA imposed an unconditional obligation on DOE to begin accepting SNF on or before January 31, 1998. *See Indiana Michigan Power Co. v. U. S. Dept. of Energy,* 88 F.3d 1272 (D.C. Cir. 1996).

24. In response to the *Indiana Michigan* decision, on December 17, 1996, DOE issued a letter to Standard Contract holders stating: "Pursuant to Article IX of the Standard Contract, this letter is to advise you that DOE anticipates that it will be unable to begin acceptance of SNF for disposal in a repository or interim storage facility by January 31, 1998." DOE subsequently stated that "this delay was due to circumstances beyond the reasonable control of DOE and therefore the anticipated delay was unavoidable' within the meaning of Article IX of the Standard Contract."

25. On January 31, 1997, a number of Standard Contract holders filed a petition with the D.C. Circuit for a Writ of Mandamus to compel DOE to comply with the mandate in *Indiana Michigan*.

26. On June 3, 1997, while the mandamus proceeding was pending, DOE issued a Preliminary Determination that DOE's delay in beginning SNF disposal was "unavoidable."

27. On November 14, 1997, the D.C. Circuit issued its decision in *Northern States Power Co. v. U. S. Dept. of Energy,* 128 F.3d 754 (D.C. Cir. 1997) in response to the Writ of Mandamus filed by Standard Contract holders, rejecting DOE's June 3, 1997 Preliminary Determination.

28. The Court in *Northern States Power* expressed dissatisfaction with DOE's response to the *Indiana Michigan* decision. The Court stated:

> After issuing our decision in *Indiana Michigan*, we would have expected that the Department would proceed as if it had just been told that it had an unconditional obligation to take the nuclear materials by the January 31, 1998, deadline. Not so. Quite the contrary. . . The contractual obligations created consistently with the statutory contemplation leave no room for DOE to argue that it does not have a clear duty to take the SNF from the owners and generators by the deadline imposed by Congress...We held in *Indiana Michigan* that the NWPA imposes an unconditional duty on DOE.

> . . to assume an unqualified obligation to take the materials by the statutory deadline.

*Id.* at 757 - 760.

29. The Court refused to accept DOE's defense of unavoidability, finding the defense merely a recycled argument which had been previously rejected by the Court in *Indiana Michigan*.

30. The Court invalidated DOE's interpretation of the "unavoidable delays" clause because it would "absolve itself from bearing the costs of its delay if the delay is caused by the government's own acts." *Id.* at 760.

31. The Court, in applying the mandamus test, did not grant all of the relief requested by petitioners. While the Court found that there was a clear right to relief and a clear duty to act, it also found that the Standard Contract presents "another potentially adequate remedy." *Id.* at 759. The Court held that the petitioners must, in the first instance, pursue contract-based remedies.

32. January 31, 1998, came and went without DOE accepting any SNF from any Standard Contract holder, including GE.

33. A number of Standard Contract holders have filed and pursued lawsuits against the DOE in this Court.

34. On August 31, 2000, the United States Court of Appeals for the Federal Circuit issued companion decisions in *Maine Yankee Atomic Power Co. v. U. S.*, 225 F.3d 1336 (Fed. Cir. 2000) and *Northern States Power Co. v. U. S.*, 224 F.3d 1361 (Fed. Cir. 2000), effectively holding that the DOE is liable for breach of the Standard Contract and that claims for damages should be pursued through lawsuits in the Court of Federal Claims. In these opinions, which resolved divergent holdings of two Court of Federal Claims judges and became final in December 2000, the Federal Circuit concluded that claims against DOE in these circumstances do not "arise under" the contract, and may therefore be brought directly in court.

35. The rationale, articulated in the *Maine Yankee* decision, was that the DOE's across-the-board failure to begin taking fuel was not a "delay" as that term is used in the Standard Contract. Rather, the "delay" term of the Standard Contract contemplates the sort of routine delays one might expect to arise in connection with acceptance of fuel from individual utilities, *i.e.*, after programmatic performance by the DOE had commenced.

36. The Federal Circuit's *Northern States Power* decision adopted the rationale of the *Maine Yankee* decision on the jurisdictional issue, reversing the lower court. It also reiterated the unconditional obligation of the DOE as expressed by the D.C. Circuit, and accordingly affirmed the ruling in plaintiff's favor on liability for breach of contract.

37. DOE continues to refuse to provide a firm date for commencing the disposal of the SNF at Vallecitos.

**Damages to Plaintiff Caused by DOE's Partial Material Breach**

38. Plaintiff has complied with its obligations under the Standard Contract but has not received DOE's promised performance. DOE's partial material breach of its statutory and contractual obligations has required Plaintiff to take actions, at substantial cost, to maintain the SNF at Plaintiff's Vallecitos facility.

39. GE has incurred, and will continue to incur, substantial damages related to costs associated with the storage of SNF at Vallecitos, as a direct and proximate result of Defendant's breach.

**CLAIMS FOR RELIEF**
**COUNT I**

**(Partial Material Breach of Express Written Contract)**

40. Plaintiff repeats and re-alleges paragraphs 1 through 39 above.

41. The Standard Contract is a valid and binding contract between Plaintiff and Defendant.

42. The Standard Contract required Defendant to commence accepting SNF on or before January 31, 1998.

43. Plaintiff has complied and continues to comply with all of its obligations under the Standard Contract.

44. Defendant, which has an unconditional obligation to commence accepting SNF by January 31, 1998, has not accepted any SNF from Plaintiff.

45. Defendant's failure to perform the services contemplated by the Standard Contract on or before January 31, 1998 constitutes a partial material breach of the Standard Contract by Defendant.

46. Plaintiff has incurred and will continue to incur significant damages as a direct and proximate result of Defendant's partial material breach of the Standard Contract.

47. As a direct and proximate result of Defendant's partial material breach, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

**COUNT II**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

48. Plaintiff repeats and re-alleges paragraphs 1 through 47 above.

49. The Standard Contract between Plaintiff and Defendant contains an implied covenant of good faith and fair dealing, pursuant to which Defendant has a duty to perform its obligations under the Contract in good faith and not to take actions

detrimental to Plaintiff's contractual rights. Defendant has breached the covenant of good faith and fair dealing by failing and refusing to take reasonable steps to meet the contractual deadline for beginning to dispose of SNF; by consistently attempting to avoid its obligations under the Contract as defined by the D.C. Circuit; and by failing to take steps that it could have taken to dispose of the SNF at Vallecitos or even to provide Plaintiff with a firm date on which Defendant will begin to do so.

50. Defendant's failure to act has not been the result of technical inability, legal impediment, or inadequate resources. DOE annual expenditures from the Nuclear Waste Fund have consistently been well below the level of annual receipts into the Nuclear Waste Fund. There are ample funds available to DOE to comply with its contractual obligations.

51. In contrast to Defendant's failure to take any action to meet its contractual commitments to Plaintiff, Defendant has taken action to receive, transport and store SNF from other entities. For example, Defendant has accepted and stored SNF from domestic and foreign research reactors.

52. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered and will continue to suffer damages as alleged above.

## COUNT III

### (Taking Without Just Compensation of Real Property)

53. Plaintiff repeats and re-alleges paragraphs 1 through 52 above.

54. The Government was and is unequivocally obligated to commence acceptance and disposal of the SNF stored at Vallecitos.

55. The Government's failure to honor its commitments was, and continues to be, unnecessary and extraordinary.

56. The Government's failure and refusal to comply with its obligations for acceptance and disposal of the SNF stored at Vallecitos has deprived, and will continue to deprive, Plaintiff of the full value and economic use of the real property at Vallecitos on which the SNF is stored.

57. By reason of the foregoing, Defendant's failure to dispose of the SNF stored at Vallecitos amounts to a Fifth Amendment taking of Plaintiff's real property at the Vallecitos facility, without just compensation. Plaintiff is entitled to just compensation for this taking in an amount to be established at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant, the United States, in an amount to be determined in further proceedings, together with such additional costs, fees, and other relief as the Court may deem just and appropriate.

Respectfully submitted,

Brad Fagg (Counsel of Record)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania, N.W.
Washington, DC 20004
(202) 739-5191 Telephone
(202) 739-3001 Facsimile

Of Counsel:
Paul M. Bessette
MORGAN, LEWIS & BOCKIUS LLP

Attorneys for Plaintiff
General Electric Company

January 29, 2004